Proceed to the next page. Snook Markets, Inc. v. Workers' Compensation Comm'n Number 511-0455. Counsel, please. May it please the Court. Mr. Keefe, good morning. My name is Jay Lorry. I'm here on behalf of the employer, Snook Markets, in this matter. And I'd like to start off by stating that this is not a work injury. They've alleged a date of injury of May 2009, May 2nd. Their courts mentioned the records. But if you look at the actual medical records and her testimony, she had an injury at home on November 4th, 2008, approximately six months before the alleged date of injury. She gives a history of getting up that morning with an explosion in her neck as a friend driver to the emergency room where she gets treatment and continues to treat for several weeks after that. She then testified at the hearing that these problems never went away. She continued to have problems in her neck all the way up until May of 2009. In any treatment she received after May of 2009, she tells all the doctors, my problems began back in November of 2008. I think if you look at the records and you look at her testimony, it shows that this is an injury that happened at the home and not at work. But did you say something? What's your opinion on how the injury happened in November of 2008? She gives a history of waking up that morning with an explosion in her neck. Right. She testified that she might have been talking on the phone. She testified that some of the records say she just got up with it, but she's at home when she has this explosion in her neck. And she goes to the hospital that day. Yes. He pursued on a repetitive trauma theory, correct? Even repetitive trauma, I don't think he's shown any change in her condition for this neck problem. Well, the fact that she woke up, because the symptom didn't manifest itself to any extreme degree on the workplace, it's not just theory that therefore it can't be a repetitive trauma case because it happened in the morning, right? Well, it happened six months before. I mean, she was working then, wasn't she? Yes, she was working then. But then you also have the problem with repetitive trauma is, if you rely on Dr. Sprick for that, he never had a history of her job duties. He really didn't know what she did. He just assumed. We all know what checkers do. That's why it's related to work. But he didn't know. He didn't get the testimony. She never told him what she did. So she had preexisting conditions, which I'm sure is part of your argument, right? Now, I dispute that. I don't think it's a preexisting condition. I think she had an injury in November of 2008. I don't have anything saying that she had problems before November of 2008 and that problem just existed. She had an injury in November of 2008 waking up in the morning. Correct. To no apparent cause. To no apparent cause, yes. And that's her testimony. That's what she said. I mean, that's in the medical records. That they had no apparent connection to work? That's what she testified to? Yeah. I mean, no doctor related to work. Even Dr. Kennedy said, I can't relate that to work. If she just woke up with problems. Dr. Sprick was asked, can you get up in the morning and have neck pain? And he said, yes, you can. And I don't think. Why can't repetitive trauma of her job be an aggravation of a preexisting injury? I don't think that testimony was elicited in this claim. Well, what did Sprick say? Sprick testified that he thought it was related to her job duties. He didn't say it aggravated her condition. It was causally related to the repetitive nature of her job duties. But then he also testified that looking at the MRIs, this could be related to the natural aging process as well. He explained that the turning of the head and the neck on a repetitive basis can cause the condition experienced by the plaintiff. He did testify that way? After reviewing the MRI examination of November 2008, July 2009, he determined that July 2009 studies show a new finding of an annual tear, which was a change in pathology that could have been caused or aggravated by her work activities. But he didn't know what her work activities were. He turned her head. She turned her head. He didn't know how much or how far she turned her neck. I think he only has to know that she turns it on a regular basis, doesn't he? She could turn her neck in her everyday life too. I don't think it's any risk greater than the general public. Kennedy even opines that the acute outset of pain as a result of an employment-related incident on May 2, 2009, could have aggravated the plaintiff's cervical spine condition. Didn't he testify to that? Was that his new opinion? He didn't testify. His records weren't there. But his history is wrong too. If you read the hypothetical he was given, he was told she lifted something on that day. There is no testimony in the record that she lifted anything on that day. But that's different. You can't stand there and say there's no evidence in the record to support the claim. That's not accurate, is it really? You're taking issue with the underlying basis is flawed. You can make that argument. But you can't say these doctors didn't testify in the claimant's favor, can you? No, no. Well, strict testify in her favor. Let's get that straight. But you just need to be denying that there's any evidence to support the claimant. You're questioning the quality of the evidence. That's fundamentally different than the nature of the evidence. Okay? Okay. What I'm saying is I don't think Sprick had a proper foundation or history. I understand that. And I think he also testified when he was given the facts that it could be related to the natural aging process. Again, my problem with Kennedy is I don't think he was given an accurate history. I think he has a foundational problem. So to rely on either of them I think is faulty. Well, that's a fair argument. Okay. And that's my argument. I think if you look at the records, you know, if you follow the chronological order of the records, she had an injury at home on November of 2008. She continued to have problems. She told all the doctors she had this problem. I don't believe it's related to work. And I would ask that if you do look at the records and her testimony, that you reverse the award and find that the necron does not arise out of it in the course of her employment. Thank you. Thank you, Counsel. Counsel, please. Thank you, Your Honors. Can I please report? Mr. Lurie, Jim Keefe on behalf of Eileen Pulley. I think Dr. Sprick did understand what she did. She testified she worked 30 to 36 hours a week for 19 years as a grocery checker, and Dr. Sprick said, you know, she turns her head constantly. She reaches down. And those are the type of job activities that would aggravate or accelerate an underlying degenerative condition in the neck. And what we know is, yeah, she woke up at home with neck pain on November 2008. She went to the emergency room. She had an MRI. We have a C560 pulse. We have two chiropractor visits, no lost time, other than maybe the day of the emergency room. She goes back doing the exact same job, and she testifies, my neck got worse because I was doing these job duties. And we get to this about three-day period in May of 2009, and she said doing her job, it just became too much. In fact, I believe she actually said there was one time when she was scanning a larger item, and that was basically it, and she told her supervisors about this all along. So I think that there is sufficient evidence in the record to support the opinion of Dr. Sprick that there was a further aggravation or acceleration of this condition. All right, he recognizes that. I think it's in the record, but he raises the point, how do you respond? Yeah, the evidence, the testimony is there, the conclusion is there, but it rests upon a flawed foundation. What's your response? I don't think it's a flawed foundation. Dr. Sprick said she constantly turned her neck side to side and reached her arm, didn't move items, which is exactly what she testified to. So I don't know how there's a flawed foundation there. Basically, she testified to exactly what basically Dr. Sprick said. Did he know it was exactly 30 hours every week? No, but, I mean, it's reasonable to conclude, as the commission did, that if somebody says they do something basically 30 hours a week, constantly moving their necks and reaching and lifting, that that's more than enough to support the commission's decision. On top of which, we do have an obvious change in pathology. You can see 5-6 levels from November of 2008 to July of 2009. 5-6 in 08, nobody recommended surgery, nobody recommended injections, but we get to this point where she continues to do this job and has more symptoms doing the job. And then by May of 2009, it's too much. She immediately goes and sees the chiropractor and says, yeah, this is all related to my work, and she tells the same to every doctor thereafter. So we get a new MR and we got a change, and Sprick says, yeah, could it possibly be related to natural degeneration? Yes, but it's more likely that it's related to an aggravation of a previous condition. I believe that was exactly his testimony. In terms of Kennedy, when we did write him, I think he was relying upon, when she said, you know, I picked up that one item, so I don't know if he was relying more on that than the general work duties, but I think the basic point was she was working full unrestricted duty after November of 2008 when she complained of this neck pain and the symptoms got worse. So I believe the manifest way to the evidence does support the opinion of Dr. Sprick. Dr. Mishkin, I mean, it's pretty easy to see why they didn't find that credible. He basically concludes, well, she wasn't having any of these problems while working, yet several times in his reports he said, well, she reported she was sore after working all day, et cetera, and that's all listed in the brief, so I don't really know how he reached that conclusion. And because, again, we believe this is related and the commission got it right, that the award for PPD should be affirmed. There was a suggestion that she was capable of working light duty post-surgery by Dr. Sprick, but, again, there was nobody tendering light duty. And lastly, I think the bills were causally connected by Dr. Sprick, so we would ask that that award also be affirmed. Thank you. Rebuttal. I just want to bring up one quick point on rebuttal. The arguments made were that she continued her job unchanged, but actually she testified that she did change her work schedule after the November 2008 injury. She worked less hours, and she indicated that she would get help lifting heavier items after the original neck injury. Again, I just need to reiterate that I think this is a non-work-related injury, that she injured herself at home, and she's trying to place the responsibility on it on the employer. Whether she held out six months before it became unbearable or for a day, I don't think it makes a difference. I think she had a non-work-related injury that the employer should be responsible for. Thank you. The court will take the matter under advisement for disposition. We'll stand at recess for a short period.